UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

LEO F. SCHWEITZER, III,       :
                              :
      Plaintiff            :
                              :
      v.                  : CIVIL NO. 2:CV-08-1806
                              :
THE UNITED STATES, et al.,     :
                              :
      Defendants      :

## MEMORANDUM

Leo F. Schweitzer, III, filed this action wherein he asserts claims pursuant to 28 U.S.C. §2671 et seq. ("Federal Tort Claims Act"), as well as Bivens[1] claims pursuant to 28 U.S.C. § 1331. Only the Federal Defendants remain in this action. Presently pending is Defendants' motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1)(5) and (6). For the reasons that follow, the motion will be granted and the case closed.

## I.    Background

The court has previously set forth the relevant procedural and factual background in this case, and will assume the parties familiarity with the prior

---

[1] See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

decisions issued in this case. In addition, the Federal Defendants' brief in support of their pending motion to dismiss sets forth a thorough procedural and factual history in this matter. As such, the relevant facts will only be summarized herein.

The moving Defendants consist of 31 current or former federal employees whom Schweitzer claims violated his constitutional rights during the course of his criminal proceedings which span over 20 years. The following 17 Defendants are sued in their individual capacities: 7 Assistant United States Attorneys (Judson Aaron, Bruce Chasan, Richard Goldberg, Christopher Hall, Marsha McClellan, James Rohn and Gerald Sullivan); 4 FBI agents (Thomas Aloan, William Evans, Stephen Ford and Robert McKenney); 5 United States Probation Officers (Gail Ahbugui; Sally Keglovits, Michael Santella, Donald Miller and Christopher Moughan) and 1 DCIS agent (Robert Koons). Also included among the Federal Defendants are the following 14 current or former federal employees in their official capacities: the Attorney General and the Solicitor General of the United States; 3 U. S. court employees (William Burchill, Associate Director and General Counsel of the Administrative Office; Douglas Sisk, former clerk of the Third Circuit; and Bradford Baldus, former legal advisor in the Third Circuit); Gerald Auerbach, General Counsel for the U.S. Marshal Service; Patrick Meehan, former U.S. Attorney in the Eastern District of Pennsylvania; Judges Clarence Newcomer and Daniel Huyett, III; former U.S. Magistrate Judge Diane Welsh; William Haynes, former General Counsel in the

2

Department of Defense and 3 U.S. Parole Commission employees (Scott Kuble; Teah Wedlock and John Simpson).

The extensive complaint filed by Schweitzer is organized into six "Acts." Each Act raises constitutional challenges to different events occurring during his past criminal proceedings. Specifically, he raises challenges relating to his 1985 conviction in the Eastern District of Pennsylvania before Defendant Huyett where he was convicted by a jury on multiple counts of intentionally selling faulty goods to the government by means of false statements and mail fraud. He was sentenced to 15 years in prison, and ordered to pay $427,902 in restitution. The conviction and sentence were affirmed on appeal. United States v. Schweitzer, 800 F.2d 1141 (3d Cir. 1986). Relief pursuant to 28 U.S.C. § 2255 was later denied, however the amount of restitution was reduced. United States v. Schweitzer, 1988 WL 115774 (E.D. Pa. Oct. 26, 1988). Schweitzer's appeal with respect to the denial of § 2255 relief was dismissed.

Schweitzer also raises constitutional challenges with respect to his 1995 conviction following a plea of guilty to conspiracy, making false statements and money laundering. In an effort to reduce his criminal history and lessen his sentence with respect to this conviction, Schweitzer filed a writ of corum nobis. Defendant Newcomer denied this collateral effort to nullify his 1985 conviction. The Third Circuit Court of Appeals affirmed. United States v. Schweitzer, 107 F.3d 9 (3d Cir.),

3

cert. denied, 521 U.S. 1126 (1997). Thereafter, Newcomer sentenced Schweitzer to 41 months in prison. The conviction and sentence were affirmed on appeal.

In the complaint, Schweitzer also raises claims relating to his 2004 conviction following a guilty plea to numerous counts of mail fraud, wire fraud and making false statements. He was sentenced to 84 months in prison on these charges. The conviction and sentence were affirmed by the Third Circuit. United States v. Schweitzer, 454 F.3d 197, 202 (3d Cir. 2006).

Schweitzer filed an unsuccessful petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his 1985 conviction and sentence calculation by the Bureau of Prisons. The Third Circuit also dismissed his appeal from the district court's decision. He also filed several civil rights complaints challenging his convictions in the Middle District of Pennsylvania, the latest of which is the instant action which was transferred to this court.[2]

In addition to raising constitutional challenges relating to his convictions, his Writ of Error Coram Nobis and the appeals and habeas petitions he has filed, Schweitzer also alleges that federal and local officials engaged in unconstitutional conduct when they "shuttled" him between various federal prisons which he claims interfered with his ability to pursue his appellate cases. He further claims the U.S.

_____

[2]The undersigned was designated to preside over the case in the Eastern District pursuant to 28 U.S.C. § 292(b).

4

Parole Commission improperly calculated his incarceration date, and raises violations with respect to Parole Commission decisions in 2001 and 2002, as well as the criminal proceedings leading up to his 2004 conviction.

On November 26, 2008, Schweitzer filed a lengthy complaint in the Middle District of Pennsylvania asserting civil claims relating to his alleged improper convictions, and naming many of the same Defendants herein. The complaint was dismissed on the basis that: (1) the FTCA and <u>Bivens</u> claims were found to be untimely; (2) a civil rights action could not be used to challenge the length of Schweitzer's sentence; and (3) the claims were barred by <u>Heck v. Humphrey</u>.[3] <u>See Schweitzer v. United States, et al.</u>, Civil Action 08-2146 (M.D. Pa.). On December 2, 2009, the Third Circuit Court of Appeals affirmed the dismissal.[4] <u>Schweitzer v. United States, et al.</u>, 354 F. App'x 601, 2009 WL 4298178 (3d Cir. Dec. 2, 2009).

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R.

---

[3] <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

[4] While the Third Circuit noted that the tort claim, as it related to Schweitzer's 2004 guilty plea, might not be untimely, they found it unnecessary to resolve this issue in that the complaint was properly dismissed on other grounds. His claims were found to be collateral attacks on his convictions, and such attacks must be brought via habeas corpus. Further, Schweitzer had challenged his sentence many times and each challenge had been rejected by the court. It was further noted that Schweitzer now fell under the "Three Strikes" provision of the Prison Litigation Reform Act, 28 U.S.C. § 1915(g).

Civ. P. 12(b)(6). Under Rule 12(b)(6), a motion to dismiss may be granted only if,

accepting all well-pleaded allegations in the complaint as true and viewing them in

the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial

plausibility. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). This

requires a plaintiff to plead "sufficient factual matter to show that the claim is facially

plausible," thus enabling "the court to draw the reasonable inference that the

defendant is liable for misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d

203, 210 (3d Cir. 2009)(internal quotations marks and citation omitted). "The

plausibility standard is not akin to a "probability requirement," but it asks for more

than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, ___

U.S. , ___, ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)(quoting Twombly,

550 U.S. at 556.) If a party does not "nudge [his] claims across the line from

conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at

570. "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a

court "'is not bound to accept as true a legal conclusion couched as a factual

allegation.'" Id., 127 S. Ct. at 1965 (quoted case omitted). After Twombly and

Ashcroft, "conclusory or bare-bones allegations will no longer survive a motion to

dismiss; threadbare recitals of the elements of a cause of action supported by mere

conclusory statements do not suffice." Fowler, 578 F.3d at 210 (internal quotation

marks and citation omitted). While the complaint "does not need detailed factual

allegations ... a formulaic recitation of the elements of a cause of action will not do."

Twombly, 550 U.S. at 555.

III.   **Discussion**

In moving to dismiss the complaint against them, the Federal Defendants raise

arguments pursuant to Heck v. Humphrey, statute of limitations, res judicata and/or

collateral estoppel, sovereign immunity with respect to constitutional claims against

the United States or its employees, immunity and insufficient service of process.  The

court will address each of these arguments in turn.

A.   **Claims barred pursuant to doctrine of Heck v. Humphrey**

It is well established that a prisoner's civil rights suit for damages is barred

unless he can demonstrate that his conviction or sentence has been invalidated.  Heck

v. Humphrey, 512 U.S. 477, 486-87 (1994).  Heck's favorable termination rule

applies "no matter the target of the prisoner's suit ... if success in that action would

necessarily demonstrate the invalidity of confinement or its duration."  Wilkinson v.

Dotson, 544 U.S. 74, 81-82 (2005).  Although Heck involved a state prisoner seeking

damages under Section 1983 for allegedly unconstitutional conduct, the principle also

applies to Bivens claims against federal officials.  See Holmes v. Dreyer, 2011 WL

2464687, *1 (3d Cir. June 22, 2011).

For the most part, the allegations contained in the complaint against the Federal

Defendants are arguments that they committed unlawful acts which led to

7

Schweitzer's criminal convictions. Peppered throughout the complaint are his claims

that he is innocent, was wrongly convicted, and that Defendants continued to use his

"void 1985 judgment" to further extend his period of incarceration. For example,

whether it is Schweitzer's claims that his constitutional rights were violated during

his criminal trials due to (1) federal prosecutors and investigators using improper

tactics in prosecuting him and providing false testimony; (2) federal judges issuing

improper rulings, incorrect jury instructions and inappropriate sentencing

enhancements or (3) actions taken on the part of federal agents/probation and parole

personnel, it is clear his underlying purpose is to argue that Defendants' alleged

unlawful conduct led to his criminal convictions and the length of the sentences he

served. However, irrespective of how Schweitzer labels his claims, his action is

barred because he clearly challenges the lawfulness of his convictions. As set forth

earlier, while he has previously attacked his convictions in multiple forums, he simply

is unable to demonstrate that any of his criminal convictions have been reversed on

appeal, expunged, declared invalid or questioned in a federal habeas proceeding. For

these reasons, the claims raised in the pending action are not cognizable and are

subject to dismissal pursuant to Heck under Fed. R. Civ. P. 12(b)(6).

## B.    Statute of Limitations Bar

With respect to any FTCA claim Schweitzer attempts to assert, it is evident

that the majority of tort claims in the complaint would be barred because he failed to

file an administrative claim within the required two-year period of when his claims accrued. The FTCA requires that a claimant submit his or her administrative claim to the appropriate agency within two years after the date on which the cause of action accrued. 28 U.S.C. §§ 2401(b), 2675(a). This administrative exhaustion requirement cannot be waived. See Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971). The failure of a claimant to present his or her administrative tort claim via an executed Claim for Damage or Injury Form, see 28 C.F. R. § 14.2(a), within the prescribed time period is grounds for the dismissal of the FTCA action.

In the instant case, Schweitzer attaches to his complaint an administrative tort claim he presented to the Department of Justice on November 7, 2005.[5] ( Doc. 1, Complt. at pps. 6-10.) However, in reviewing the complaint it is clear that the majority of the claims raised therein occurred well before November 3, 2003. As such, this court lacks jurisdiction with respect to any tort claim occurring during the time prior to November 7, 2003.[6] Further, any additional claims set forth in the complaint that could be construed as timely (alleged actions occurring after November 7, 2003 and within the two years before he filed his administrative claim) fail to support a tort claim. Any such claims attack his 1985 conviction, challenge the

---

[5] While the administrative tort claim is dated October 15, 2005, it was not presented to the U.S. Department of Justice until November 7, 2005.

[6] Even assuming the prison mailbox rule had application in the instant case, any claims prior to October 15, 2003 would clearly be barred.

BOP's computation of his sentence and seek to undermine his 2004 guilty plea. In affirming the decision of the United States District Court for the Middle District of Pennsylvania on December 2, 2009, the Third Circuit Court of Appeals rejected the substance of each of these claims. See Schweitzer v. United States, et al., (3d Cir. Dec. 2, 2009)("Schweitzer's claims are, in effect, collateral attacks on his convictions. . . . Schweitzer's claims are premised on the alleged breach of a plea agreement, his alleged actual innocence of any criminal wrongdoing, and the alleged unreasonableness of his sentence for the crimes of conviction.")  As such, the FTCA claims are hereby subject to dismissal.

### C.    Claims Barred by Collateral Estoppel

Defendants also maintain that Schweitzer's claims are barred by collateral estoppel. Collateral estoppel, also referred to as issue preclusion, specifically bars relitigation of an issue that was conclusively determined in a prior adjudication and that was essential to the original judgment. See Montana v. United States, 440 U.S. 147, 153 (1979); Arlington Industries, Inc., v. Bridgeport, 692 F. Supp. 2d 487 (M.D. Pa. 2010). Embodied in the doctrine of collateral estoppel is the promotion of fairness and certainty, and the prevention of the wasteful expenditure of resources by addressing issues that have previously been resolved through adversarial proceedings.

The Third Circuit Court of Appeals has defined the parameters of this doctrine in the following manner:

10

Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir. 1995)(quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir. 1992)); see also Parklane Hosiery Co. v. Short, 439 U.S. 322, 326, n. 5, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). In its classic form, collateral estoppel also required "mutuality" - i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parkland Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. V. Univ. of Ill. Found., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-75 (3d Cir. 2007).

Schweitzer has quite a history on both the district court and appellate levels with respect to habeas petitions and collateral challenges regarding his criminal convictions, as well as the filing of civil complaints. In taking judicial notice of the dockets of other federal courts with respect to these matters, it is evident that Schweitzer has raised the same issues there that he now attempts to repackage in the pending complaint. Once again, he now attempts to raise collateral attacks with respect to his criminal convictions in 1985, 1995 and 2004, and in arguing that his continued confinement with respect to said convictions was the result of unconstitutional conduct by everyone he ever came in contact with during the underlying criminal proceedings and the challenges pursued thereafter. This court

specifically relies on the decision issued by the Third Circuit Court of Appeals on December 2, 2009, reaffirming that Schweitzer cannot continue in his attempts to file civil actions in an attempt to collaterally attack his criminal convictions. See Schweitzer, 354 F. App'x 601 (3d Cir. 2009). For these reasons, Defendants argument that Schweitzer's claims are barred by collateral estoppel are well-taken, and we find that he is barred from now attempting to litigate scores of claims that he had numerous opportunities to litigate, and in fact has litigated, prior to this action.

### D.  Sovereign Immunity

Sovereign immunity precludes Schweitzer from bringing a Bivens action for money damages against any of the Defendants in their official capacity as federal agents. FDIC v. Meyer, 510 U.S. 471, 475 (1994)("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); Lewal v. Ali, 289 F. App'x 515, 516 (3d Cir. 2008)(noting that claims against federal agents in their official capacities are claims against the United States and, as such, are barred by sovereign immunity). Thus, all Bivens claims against Defendants in their official capacities are also subject to dismissal with prejudice.

### E.  Immunity of Judicial Defendants and Court Personnel

To the extent Schweitzer seeks to impose liability against any of the judicial defendants in their individual capacity, his claims are also subject to dismissal on the basis of absolute immunity. Immunity from suit applies to judicial officers in the

performance of their official duties, thereby relieving them from liability for judicial acts. Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9, 12 (1991)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Azubuko, 443 F.3d at 303 (citing Stump v. Sparkman, 435 U.S. 349, 356-57 (1978). This immunity is not forfeited even when "grave procedural errors" are committed, id. at 359, or when a proceeding is conducted in an "informal and ex parte" manner. Forrester v. White, 484 U.S. 219, 227 (1988). A judicial defendant also does not lose such immunity when actions he takes may be "unfair" or decisions made may be "incorrect." Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 769 (3d Cir. 2000). It is only in the limited circumstances where a judge takes actions which are not in his judicial capacity or, although judicial in nature, are "taken in the complete absence of all jurisdiction" where immunity may be overcome. See Forrester, 484 U.S. at 227-29; Mireles, 502 U.S. at 12.

In the instant complaint, it is clear that the claims raised against Judges Huyett, Newcomer and Welsh are barred by the doctrine of absolute judicial immunity. Schweitzer challenges decisions made by said Defendants during the course of his criminal cases. As such, these Defendants are properly dismissed from this action.

Schweitzer also asserts claims against other court personnel such as Defendants

Burchill, Baldus and Sisk.[7]   Schweitzer seeks to impose liability against former Clerk of Court for the Third Circuit, P. Douglas Sisk, due to responses he filed on behalf of the court to correspondence sent by Schweitzer. (Doc. 1, Compl. at ¶ 107.)  He appears to name Baldus due to knowledge he had of the alleged errors taking place in his criminal proceedings in his position as former Senior Legal Advisor in the Third Circuit Court of Appeals. (Id. at ¶ 187.)

The protections of judicial immunity extend to those who perform "quasi-judicial" functions. Gallas, 211 F.3d at 772-73 (citing Forrester, 484 U.S. at 225)(the protections of judicial immunity extend to officials "who perform quasi-judicial functions"); Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir. 1996)("[Defendant], while acting as Clerk of the United States District Court in many of his actions performed quasi-judicial functions entitled to absolute immunity."); Dellenbach v. Letsinger, 889 F.2d 755, 763 (7th Cir. 1989)("[W]e conclude on the facts before us that the court personnel are entitled to absolute quasi-judicial immunity for their alleged acts [undertaken] pursuant to the judge's instructions."). Because any claims alleged against Burchill, Baldus and Sisk appear to arise from acts that were integral to the judicial process and/or performed at the instruction of the court, the court finds that said Defendants are entitled to absolute quasi-judicial immunity.

---

[7] The court notes that Burchill is only identified by Schweitzer as a party in this action, and no specific claims appear to be asserted against him in the body of the complaint.

14

**F.**   **Prosecutorial Immunity**

In the complaint, Schweitzer sets forth numerous claims against federal prosecutors spanning the time period from 1984 through 2003. He contends that Defendant Assistant U.S. Attorney ("AUSA") Chasan drafted a defective indictment against him and presented it to the grand jury in January of 1984. (Doc. 1, Compl. ¶ 19). He also contends that AUSA Rohn "testified before the grand jury and vouched for the indictment, and induced the Foreman and the jury to return a True Bill." (Id., ¶ 25.) Schweitzer further alleges that throughout his trial during the government's case-in-chief, AUSA McClellan presented false and misleading evidence and testimony. (Id., ¶31.) He claims that AUSA Goldberg "thwarted" Schweitzer's bid for bail following his arrest on a criminal complaint on or about January 24, 1995, by providing information based upon his earlier conviction in 1985 that he argues was invalid. (Id., ¶ 51.) Another allegation is the filing by AUSA Aaron of a "Courtesy Copy" of the government's response to Schweitzer's Writ of Coram Nobis in late 1995/early 1996 in an effort to circumvent a subsequent motion Schweitzer had filed for default. (Id., ¶94.) The complaint also claims that AUSA Hall wrongly initiated criminal proceedings against him with respect to his arrest for the violation of parole conditions. (Id., ¶151.) Schweitzer states that following a Probable Cause hearing he was found not guilty and released. Finally, Schweitzer asserts a claim against AUSA Sullivan. He claims that in response to a Declaratory

15

Judgment Action he filed before District Judge Gardner challenging his alleged 1985 void judgment, Sullivan filed a motion on behalf of the government in response to the action. (Id., ¶ 199.)

In Imbler v. Pachtman, the United States Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983 ." 424 U.S. 409, 431 (1976).[8] In order for absolute immunity to apply, the prosecutor's conduct during the initiation and presentation of the State's case must be "an integral part of the judicial process." Id. at 430 (quoting Imbler v. Pachtman, 500 F.2d 1301, 1302 (9th Cir. 1974)); Henderson v. Fisher, 631 F.2d 1115 (3d Cir. 1980). The immunity is broadly defined, covering all acts, regardless of motivation, associated with a prosecutor's function as an advocate. See Miller v. Mitchell, 598 F.3d 139, 154 n.17 (3d Cir. 2010)(citing Hartman v. Moore, 547 U.S. 250, 261-62 (2006)("A Bivens (or §1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute. . . ."); Hill v. City of New York, 45 F.3d 653 (2d Cir. 1995). The United States Supreme Court has reaffirmed that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and

---

[8] Although Imbler was a suit against a state prosecutor filed pursuant to 42 U.S.C. § 1983, the United States Court of Appeals for the Third Circuit has held that public policy mandates that a similar immunity be extended to federal prosecutors in Bivens actions. Brawer v. Horowitz, 535 F.2d 830, 834 (3d Cir. 1976).

which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); see also Van de Kamp v. Goldstein, ___ U.S. ___, 129 S. Ct. 855, 861-62, 172 L. Ed. 2d 706 (2009)(reaffirming viability of prosecutorial immunity and applying absolute immunity where the prosecutor's administrative obligation was directly connected with the conduct of a trial).

The basic premise behind the immunity doctrine is that prosecutors should not be encumbered by the threat of civil liability while performing judicial or quasi-judicial functions. But a person is not immune from suit for every wrong he commits just because he happens to be employed as a prosecutor: the "inquiry focuses on 'the nature of the function performed, not the identity of the actor who performed it.'" Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008)(quoting Light v. Harris, 472 F.3d 74, 78 (3d Cir. 2007)). As such, the analysis of prosecutorial immunity issues involves ascertaining what conduct forms the basis for the plaintiff's cause of action, and what function (prosecutorial, administrative, investigative, or other) that act served. As the Supreme Court of the United States found in Van de Kamp, it is possible that some administrative functions can relate directly to the conduct of a criminal trial and are protected by absolute immunity while others (such as hiring, payroll administration, maintenance of the physical facility) are connected to trial remotely, if at all. See Schneyder v. Smith, No. 10-2367, 2011 WL 3211504, *16

17

(3d Cir. July 29, 2011).

Prosecutorial immunity has been found to apply when a prosecutor prepares to initiate a judicial proceeding, see Burns v. Reed, 500 U.S. 478, 492 (1991), appears in court to present evidence in support of a search warrant application, see Kalina v. Fletcher, 522 U.S. 118, 126 (1997); or fails to properly investigate prior to initiating a prosecution, see Schrob v. Catterson, 948 F.2d 1401, 1411 (3d Cir. 1991). The courts have found that absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, see Burns, supra, at 496, when the prosecutor makes statements to the press, Buckley v. Fitzsimmons, 509 U.S. 259, 277 (1993), or when a prosecutor's duty is purely administrative and not intimately associated with the judicial phase of the litigation, see Schneyder, 2011 WL 3211504 at *13-14.

In applying these principles to the instant case, it is clear the conduct that each of the Defendant AUSAs were engaged in and that serves as the basis of Schweitzer's claims is encompassed within the doctrine of absolute immunity. The actions of Defendants involved the initiation of criminal proceedings, presentation of an indictment to the grand jury, presentation of testimony and evidence during trial and the course of bail proceedings, and filing responses to a motion and a writ of coram nobis Schweitzer had filed in court with respect to his underlying criminal proceedings. It cannot be argued that each of these acts is not intimately associated with the judicial phase of litigation. Accordingly, the claims are barred and said

18

Defendants subject to dismissal on this basis.

### G.    Absolute Immunity for Witnesses

Without unnecessary elaboration, any claim Schweitzer attempts to state against federal agents for their alleged false testimony during the course of his criminal proceedings is also barred by the doctrine of absolute immunity. See Hoffman v. Rashid, 388 F. App'x 121, 122, 2010 WL 2977461, *1 (3d Cir. July 28, 2010). As witnesses who provided testimony during the course of Schweitzer's criminal proceedings, any federal Defendant would be protected by absolute immunity. See Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001)("Witnesses, including public officials and private citizens, are immune from civil damages based upon their testimony.")(citing Briscoe v. LaHue, 460 U.S. 325, 341, 345-46 (1983)). This immunity has also been extended to testimony in pre-trial and grand jury proceedings. See Williams v. Hepting, 844 F.2d 138, 140-1 (3d Cir. 1988); San Filippo v. U.S. Trust Co. Of New York, 737 F.2d 246, 254 (2d Cir. 1984).

### H.    Insufficient Service

Finally, the court addresses the matter of insufficient service raised by Defendants in their pending motion to dismiss. The docket verifies that there is no affidavit of service with respect to Defendants Agbugui, Sullivan, Chasan, Hall and Santella. In fact, the affidavit of service reflects that the it was returned unexecuted.

19

(Doc. No. 37.) FBI agents Aloan, Evans, Ford and McKenney also do not appear to have been properly served in their individual capacities pursuant to Fed. R. Civ. P. 4(i). Although service of the complaint was accepted on Defendants behalf when it was signed for by FBI counsel, said counsel had no authority to accept service on behalf of Defendants in their individual capacities. (Doc. 40.) Further, three of these Defendants no longer worked for the FBI and, as such, could not be served at their former place of employment. There is nothing in the record to indicate that the foregoing Defendants have been properly served with the complaint in this matter. The action was filed over three (3) years ago. As such, this would serve as a further basis for finding the court lacks jurisdiction over these Defendants. Regardless, based upon the foregoing discussion in this Memorandum, the court finds that the claims raised against Defendants are subject to dismissal in any event on alternative grounds. An appropriate order follows.